415 A.2d 9

**COMMONWEALTH of Pennsylvania**

v.

**Sidney KNIGHTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 15, 1980.

Decided May 30, 1980.

18

Gary Neil Asteak, Asst. Pub. Defender, Easton, for appellant.

Christopher T. Spadoni, Michael Vedomsky, Asst. Dist. Attys., Easton, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Following conviction by jury for burglary and theft, and denial of post-verdict motions, appellant Sidney Knighton was sentenced on June 10, 1976 to a prison term of two and one-half to five years. The Superior Court affirmed, with two judges dissenting.[1] On this appeal, appellant contends

1. Of the numerous issues raised by appellant in Superior Court, the dissenting judges would reverse judgment of sentence only with respect to the claimed violation of Pa.R.Crim.P. 1405(a).

that his sentence was illegally imposed in violation of Pa.R. Crim.P. 1405(a). We agree and accordingly vacate judgment of sentence and remand for resentencing.

Rule 1405 requires in relevant part:

"At the time of sentencing, the judge shall:

(a) afford the defendant the opportunity to make a statement in his own behalf  .   .   .   relative to sentencing."

This Rule's guarantee of an opportunity to address the court before sentencing has its origins in the long-established common law right of allocution. As early as 1689, a court's failure to permit a defendant to speak to the court before sentencing required reversal. See Anonymous, 3 Mod. 265, 266, 87 Eng.Rep. 175 (K.B.). At present, this right is recognized by the federal courts and at least half the states. See ABA Project On Minimum Standards For Criminal Justice, Standards Relating To: Sentencing Alternatives and Procedures § 5.4(a)(iii) and Commentary (Approved Draft, 1968); *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961); *Kent v. State*, 287 Md. 389, 412 A.2d 1236 (1980); *Dishman v. State*, 45 Md.App. 236, 413 A.2d 565 (1980). In Pennsylvania, the right of allocution, long recognized with respect to capital cases, see *Commonwealth v. Gates*, 429 Pa. 453, 457, 240 A.2d 815, 818 (1968) (citing cases), was extended by the Rules in 1973 to all criminal defendants.

The right of allocution has retained its vitality in contemporary sentencing schema. Notwithstanding the modern innovations in our law, nothing has "lessen[ed] .   . the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, supra, 365 U.S. at 304, 81 S.Ct. at 655. Allowing a defendant to address the court on the sentencing determination fully comports with this Commonwealth's Sentencing Code, 18 Pa.C.S. §§ 1301 et seq., which embodies "the philosophy of individual sentencing,"

*Commonwealth v. Martin,* 466 Pa. 118, 130, 351 A.2d 650, 656 (1976) (predetermined sentences are illegal).[2]

The record of appellant's sentencing hearing clearly demonstrates that appellant was denied his right of allocution pursuant to Rule 1405. At the outset of the hearing, the sentencing judge admitted his severe personal prejudice against appellant, arising apparently out of another criminal incident:

"THE COURT: Mr. Knighton, we have gone through all of this. Your counsel has read the presentence investigation that was made.

I will hear from counsel if he has anything to say, but I want to preface this with this remark: The grief that you have caused my family can never be measured.

THE DEFENDANT: What was that?

THE COURT: You don't even remember what it was. The threats that you made over the telephone, the change in our lifestyle since those calls; no way of ever going back to the way we did live in that household and I felt so strongly about that, Mr. Knighton, that I did not take it upon myself to figure out the sentence in this case because I felt too strongly.

I will hear what your counsel has to say."[3]

Counsel's response, requesting the judge to recuse himself in light of the judge's personal feelings, was ignored by the court. Instead, the sentencing judge elaborated his last statement:

"THE COURT: I think this kind of scum does not belong anywhere in this society. Under the guise of a telephone, you will make people's lives miserable, as miserable as you made those in our family, but what I have done is this: I have not entered into this sentence. I have asked my colleagues at our sentencing council to come up with a sentence and I will be guided by it, but were I

2. An additional reason in support of allocution is its therapeutic effect upon defendants. See ABA Sentencing Alternatives and Procedures, supra at p. 255.

3. Notes of Testimony 2.

doing it otherwise, because of my prejudice in this thing, I might sentence more—seriously, I think I would give you the maximum, whatever it was. Invading a citizen's household with that kind of talk—

THE DEFENDANT: May I say something?

THE COURT: No. I do not want to hear what you have to say. I will hear from counsel." [4]

Immediately before imposing sentence, the sentencing judge again explained how appellant's sentence had been determined:

"THE COURT: . . . Well, anyhow, I have been completely guided by the sentencing council and I did not enter into it and I am following what they have come up with and not what I would come up with." [5]

■ It is manifest that the sentencing judge deliberately excluded himself from the determination of appellant's sentence because of his strong personal prejudice against appellant, and instead imposed sentence, or more accurately announced sentence, on the basis of a "sentencing council's" determination reached prior to the sentencing hearing.[6] Though the sentencing judge eventually afforded appellant the opportunity to speak to the court before actually announcing sentence, the gesture was an empty one for the sentence had been already determined. Appellant's address to the court was clearly not heard by those who actually determined sentence. Appellant was therefore in reality denied his right of allocution under Rule 1405.

■ The sentencing decision is of paramount importance in our criminal justice system. At sentencing the court seeks to vindicate society's interest in imposing appropriate sanctions against those individuals determined to be crimi-

4. Notes of Testimony 3.

5. Notes of Testimony 5.

6. The record does not indicate the composition of the sentencing council, the informational basis of its sentencing determination, its vote in support of the sentence, or its reasons for selecting the particular sentence.

22

nally culpable. At the same time, however, the court must give fair and full consideration to the particular circumstances of individual defendants. The ABA Project on Sentencing Alternatives and Procedures, supra, recognizes the fundamental significance of the sentence determination:

"The consequences of a sentence are of the highest order. If too short or of the wrong type, it can deprive the law of its effectiveness and result in the premature release of a dangerous criminal. If too severe or improperly conceived, it can reinforce the criminal tendencies of the defendant and lead to a new offense by one who otherwise might not have offended so seriously again.

The decision which is presented at sentencing is also enormously complex. It properly is concerned, and often predominately, with the future which can be predicted for the particular offender. But any single-valued approach to sentencing is misdirected. A sentence which is not in some fashion limited in accordance with the particular offense can lead to a system of incomparable brutality. Per contra, a sentence or pattern of sentences which fails to take due account of the gravity of the offense can seriously undermine respect for law."

Id. at 1. A sentencing court's adherence to proper sentencing procedure provides the greatest assurance that the interests of all concerned will be protected. See e. g. *Commonwealth v. Butch*, 487 Pa. 30, 407 A.2d 1302 (1979); *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) (plurality opinion); *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976).

Fully recognizing the gravity of the sentencing decision, the Sentencing Code and the Rules of Criminal Procedure clearly contemplate that the "sentencing judge" be the ultimate adjudicator of criminal sentences. See Pa.R. Crim.P. 1401 ("Sentencing Judge"), 1403 ("Aids in Imposing Sentence"), 1404 ("Disclosure of Reports"); 18 Pa.C.S. § 1321 ("Sentencing generally"); *Commonwealth v. Kostka*, supra (sentencing judge must articulate reasons for sentence

he imposed upon defendant). There are no provisions allowing a sentencing judge to delegate the determination to any person or group as happened here.[7] A sentencing judge who believes, as the judge here believed, that he cannot fairly and impartially impose sentence, should recuse himself from the case. See Code of Judicial Conduct Canon 3 C(1)(a) ("Disqualification");[8] ABA Project on Standards for Criminal Justice, Standards Relating To: The Function of the Trial Judge §§ 1.5 ("Duty to maintain impartiality") and 1.7 ("Circumstances requiring recusation") (Approved Draft, 1972).[9]

■ The sentencing judge here sought to compensate for his admitted prejudice by excluding himself entirely from the sentencing determination in favor of a "sentencing council." Such a method clearly violated this Common-

7. The Act of December 30, 1974, P.L. 1052, §§ 1381–82, allowed a sentencing judge to seek nonbinding recommendations on sentencing in certain circumstances from the local "sentencing council." These provisions, however, were suspended by Pa.R.Crim.P. 1415 on March 31, 1975, well before the instant case, and repealed by the Act of November 26, 1978, P.L. 1316, § 2. The sentencing judge's use of a "sentencing council" was not authorized by statute, rule, or decision, nor was it part of a jurisprudential sentencing program.

8. Canon 3 C(1)(a) of the Code of Judicial Conduct provides:
"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

9. Section 1.5 of the ABA Project on The Function of the Trial Judge, supra, provides:
"The trial judge should avoid impropriety and the appearance of impropriety in all his activities, and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. He should not allow his family, social or other relationships to influence his judicial conduct or judgment."
Section 1.7 provides:
"The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned."

wealth's sentencing procedures, and deprived appellant of his right of allocution.

Judgment of sentence is vacated and the case is remanded for resentencing by another judge consistent with this opinion.