481 A.2d 1230

**COMMONWEALTH of Pennsylvania**

v.

**Melvin WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 8, 1984.

Filed Aug. 17, 1984.

Reargument Denied Oct. 15, 1984.

Allen N. Abrams, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for appellee Commonwealth.

Before ROWLEY, MONTEMURO and JOHNSON, JJ.

MONTEMURO, Judge:

Appellant contends that the trial court erred in denying his petition to withdraw his guilty plea after the Assistant District Attorney in charge of the case breached the terms of the negotiated plea.

The facts are not in dispute. The Commonwealth charged appellant with attempted murder,[1] criminal conspiracy,[2] aggravated assault,[3] carrying firearms,[4] possession of an instrument of crime,[5] recklessly endangering another person,[6] terroristic threats[7] and simple assault.[8]

After negotiations, the appellant agreed to plead guilty to the charges of aggravated assault and conspiracy and the Assistant District Attorney agreed to nol prosse the remaining charges *and to make no recommendation as to the sentence.*

On May 4, 1982, appellant entered pleas of guilty to aggravated assault and criminal conspiracy. Before appel-

1. 18 Pa.C.S. §§ 901, 2502.

2. *Id.* § 903.

3. *Id.* § 2702.

4. *Id.* §§ 6106, 6108.

5. *Id.* § 907 (A), (B).

6. *Id.* § 2705.

7. *Id.* § 2706.

8. *Id.* § 2701.

lant's guilty pleas were accepted by the sentencing judge, the Honorable Michael E. Wallace of the Court of Common Pleas of Philadelphia, an extensive and thorough guilty plea colloquy was received in open court and made part of the record. Our examination of the colloquy satisfies us that it was in complete compliance with both Pa.R.Crim.P. 319 and the criteria for accepting guilty pleas as set forth from time to time by this court and the supreme court.

Appellant represented to the sentencing judge that his pleas were voluntary and that the facts of the case as presented by the Assistant District Attorney were true. The court accepted the plea, ordered a pre-sentence investigation and a mental evaluation and set a date for sentencing.

At the sentencing hearing on June 21, 1982, counsel for appellant informed the court that he had read both the pre-sentence report and the psychiatric evaluation and that he had nothing further to add. He then presented appellant's mother who said to the judge what all loving mothers might be expected to say, namely, that appellant didn't give her any trouble until he was fifteen (15) years old,[9] that his troubles resulted from his association with the wrong crowd, that he expressed a desire to be a productive member of society, that he feels sorry for what he did, that he wants to finish his education and improve himself, and that he didn't give her any trouble before that. (N.T. June 21, 1982, p. 3). Essentially, appellant's mother was pleading for mercy, a plea that the trial judges of this Commonwealth hear every day.

The Assistant District Attorney then told the sentencing judge what he must have already known—that appellant had a long juvenile record of robberies, burglaries and assaults; that he had been committed to Glen Mills on more than one occasion; that he had been committed to the Youth Development Center at Cornwells Heights; that he was

9. Appellant was seventeen (17) years old at the time of his arrest but following a certification hearing in juvenile court he was certified to be tried as an adult.

currently under sentence for a separate robbery; that the victim in this case was shot four times, though not by appellant; that the psychiatric evaluation offered a poor prognosis and that appellant was a recidivist. All of this information was contained in the reports which were in the sentencing judge's possession. The Assistant District Attorney then said: *"I believe the defendant should be sentenced to a period of incarceration for this very serious crime."* (N.T. June 21, 1982, pp. 4–6). (Emphasis added). Clearly, the Assistant District Attorney reneged on his promise; pure and simple, he broke his word.

The sentencing judge then sentenced appellant to a term of not less than two and one-half (2 ½) years to not more than ten (10) years imprisonment on the charge of criminal conspiracy, said term to run consecutively to the sentence then being served by appellant. On the charge of aggravated assault, appellant was sentenced to ten (10) years probation to run concurrently with the sentence on the charge of criminal conspiracy.[10]

The Assistant District Attorney then nol prossed all remaining charges.

On July 1, 1982, appellant filed timely petitions for reconsideration of sentence and to withdraw his pleas of guilty. Following a hearing on these petitions held on July 15, 1982, the sentencing judge denied both petitions.[11] This appeal followed.

At the hearing on the petition to withdraw his guilty pleas, appellant argued that because the Assistant District Attorney violated the plea agreement, his plea was therefore not voluntary, and he should therefore be permitted to withdraw it.

The Assistant District Attorney agreed that for his part in the negotiated plea he would not make a recommendation

**10.** We note that the learned sentencing judge articulated the reasons for the sentences he imposed in full compliance with the mandate of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977).

**11.** In this appeal, appellant argues only the denial of his petition to withdraw the guilty pleas.

as to sentence. Then, with obvious tongue in cheek, the Assistant District Attorney said:

In reviewing my notes and also the notes of testimony, at that time I did indicate that I would point out the defendant's prior record. My note to myself on it from my DA's file indicates that I mentioned the defendant's prior record was serious, mentioned his prior conviction, and indicated to the Court that the minimum of four to eight guidelines could apply.

I don't believe I made a recommendation that he be sentenced to that because, Number 1, the agreement. However, I don't have the notes of the sentencing.

Regardless, your Honor, it is the Commonwealth's position that if the defendant was jeopardized in any way by anything that I said at the time, and if that was not part of the agreement, that your Honor could reconsider the sentence and base that sentence upon whatever your Honor has by way of facts other than what I pointed out.

Your Honor does have the copy of the defendant's prior record. Your Honor does have the defendant's presentence and psychiatric evaluation, he received the—that your Honor does sentence people based upon that, and your observation of the facts, or your memory of the facts, and that the defendant could be resentenced based upon that without regard to whatever the Commonwealth said at the time.

(N.T. July 15, 1982, pp. 6–7).

First, we must point out that nowhere in the notes of testimony did the Assistant District Attorney ever say that he would point out the appellant's record; and, further, at no time during the sentencing hearing did he indicate to the court that the minimum of "four to eight guidelines" could apply.

Secondly, as we have already indicated, the sentencing judge *always* had a copy of the pre-sentence report, psychiatric evaluation and criminal record.

The sentencing judge then said:

THE COURT: My recollection was as defense counsel stated, that the Commonwealth—I don't think there is any disagreement as to that fact; the Commonwealth did violate in a technical sense the terms of the negotiated plea but I don't think, since I don't take any consideration of anything the Commonwealth's Attorney says at sentencing anyhow I don't see why in this case the defendant was prejudiced anyhow. I never pay any attention to the Commonwealth at any sentencing, for any reason.

Most District Attorneys of the Commonwealth know it. They seldom, if ever, make a recommendation. The fact that Mr. Kolansky alluded to the minimum four to eight recommended guidelines for subsequent robbery conviction, and the fact that I didn't give him four to eight, I gave him a lesser sentence, is indicative of what I think of the Commonwealth's recommendations in most instances.

I don't feel that sufficient prejudice to the defendant has occurred to grant the petition as requested. Both petitions are denied.

(N.T. July 15, 1982, pp. 7–8).

In *Commonwealth v. Potosnak*, 289 Pa.Super. 115, 121, 432 A.2d 1078, 1081 (1981) we said:

It is well settled that the terms of a plea bargain which serves as an inducement to a defendant to plead guilty, must be binding on the prosecution. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971), *remanded, People v. Santobello*, 39 App. Div.2d 654, 331 N.Y.S.2d 776 (1st Dept. 1972); *Commonwealth v. Landi*, 280 Pa.Super. 134, 421 A.2d 442 (1980). Therefore, the prosecutor has an affirmative duty on the part of the prosecutor to honor any and all such promises. If the Commonwealth violated a plea bargain, *the defendant is entitled to the benefit of the bargain. Commonwealth v. Landi, supra; Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441 (1976). (Emphasis added).

The Commonwealth's argument is convoluted. It admits of a violation of the plea agreement and in the same paragraph characterizes the violation as an "alleged viola-

tion" and an "unintentional violation." As we have said, it was a violation pure and simple and the fact that it may have been inadvertent is of no consequence. Assuming the violation was inadvertent, the prejudice to appellant is not thereby diminished.

The Commonwealth's reliance on *United States v. Block*, 660 F.2d 1086 (5th Cir.1981), *cert. denied, Block v. United States*, 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982); *United States v. Johnson*, 582 F.2d 335 (5th Cir.1978), *cert. denied, Johnson v. United States*, 439 U.S. 1051, 99 S.Ct. 732, 58 L.Ed.2d 711 (1978); and *United States v. Miller*, 565 F.2d 1273 (3rd Cir.1977), *cert. denied, Miller v. United States*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978), is clearly misplaced. In each of those cases the prosecutor promised to make no recommendation at time of sentence and in each case the prosecutor in fact made no recommendation at time of sentence. In *Block, Johnson* and *Miller*, the prosecutor attempted to provide the court with relevant factual information or to correct mistakes *but made no recommendation as to sentence.*

■ The sentencing judge in his opinion written for this appeal, citing *Commonwealth v. May*, 485 Pa. 371, 402 A.2d 1008 (1979), correctly says that "[w]here withdrawal of a guilty plea is sought after a sentence has been imposed, a showing of prejudice amounting to manifest injustice is required before withdrawal is properly justified." L.Ct.Op. at 2. To the extent that that rule is applicable in a case such as this where the Commonwealth has violated the plea agreement, we hold said violation to constitute manifest injustice.

The sentencing judge indicated that the recommendation for incarceration made by the Assistant District Attorney in no way influenced his sentencing decision. We are convinced that this is so. However, it is immaterial whether the trial court would have been influenced by the Assistant District Attorney's recommendation. *Santobello v. New York, supra; Commonwealth v. Landi, supra.*

■ The Assistant District Attorney violated the plea agreement and appellant is entitled to relief. Just as the Supreme Court said in *Santobello*, we, too, "emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *Santobello v. New York, supra* 404 U.S. at 263, 92 S.Ct. at 499.

At this juncture the critical question is the kind of relief which appellant should receive. He has asked us to allow him to withdraw his guilty pleas and proceed to trial. On the other hand, it could be argued that he is entitled to receive no more than the benefit of his bargain and that was to receive a sentence with no recommendation from the Commonwealth. We could do that by remanding for sentencing before a different judge; however, the vagaries of the criminal justice system—where "two to ten" to one judge is fair; to another judge severe; and to another judge nothing more than "a slap on the wrist"—convinces us that such a remand would do violence to our sense of justice. The "benefit of the bargain" principle is more easily—and fairly—applied in those situations where the Commonwealth promises to ask for a specific sentence and then in violation of that promise asks for a more severe sentence which is in fact given. In those situations, implementation of the "benefit of the bargain" principle can be done with certainty and fairness. Not so here.

In this case, we are inclined to the view expressed by Mr. Justice Douglas, in his concurring opinion, in *Santobello:*

In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight, inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State.

*Santobello v. New York, supra* at 267, 92 S.Ct. at 501.

Consequently, we agree with appellant that permitting him to withdraw his guilty pleas is the appropriate remedy. Of course, the charges previously nol prossed shall all be

reinstated and appellant will plead anew to all the original charges.

The Judgment of Sentence is reversed and a new trial is granted.