# Commonwealth v. Ervin

C.P. of Delaware County, no. 175-00.

*William R. Toal III,* for appellee.
*Mark Much,* for appellant.

KOUDELIS, *J.,* February 5, 2002—

## NATURE AND HISTORY OF THE CASE

This is a direct appeal from the court's denial of appellant Robert Ervin's post-sentence motions by way of orders dated October 5, 2001, and October 12, 2001, respectively. The nature and history of the case is as follows. On January 20, 2000, the Newtown Township Police Department filed a criminal complaint charging appellant with simple assault,[1] aggravated assault,[2] reck-

1. 18 Pa.C.S. §2701.
2. 18 Pa.C.S. §2702.

lessly endangering another person (REAP)[3] and possession of an instrument of a crime (PIC).[4] Appellant was incarcerated from the date of his arrest (January 20, 2000) until November 2, 2000, at which time he was released on nominal bail pursuant to Pa.R.Crim.P. 600(e). As a condition of bail, the court ordered that appellant be subject to electronic home monitoring, as administered by the pretrial bail services unit of the Delaware County Court of Common Pleas. Appellant spent approximately 250 days in the Delaware County electronic home monitoring program.

On April 30, 2001, appellant entered an open guilty plea to the aggravated assault and PIC charges. The court permitted appellant to remain on the program until sentencing. After reviewing extensive sentencing memoranda and a sentencing hearing on July 10, 2001, the court sentenced appellant to a term of imprisonment of two years less a day to five years less a day on the aggravated assault charge and to a consecutive term of five years county probation on the PIC charge.

On July 13, 2001, appellant filed timely post-sentence motions seeking reconsideration of the court's sentence[5] and for credit for time spent on electronic home monitoring while on pretrial release. The court held a hearing on appellant's motion for reconsideration on August 14, 2001. Appellant's motion for credit for time spent on

---

3. 18 Pa.C.S. §2705.

4. 18 Pa.C.S. §907(a).

5. The motion alleged that the court abused its discretion by failing to impose a sentence in the mitigated range of the sentencing guidelines.

electronic home monitoring was consolidated with *Commonwealth v. Adam Van Skiver,* no. 6398-97, which presented a similar issue, and a hearing was held before a three-judge panel on September 20, 2001.[6]

The court denied both motions and appellant filed timely notice of appeal necessitating this opinion. In response to the court's order pursuant to Pa.R.A.P. 1925(b), appellant presents the following two issues for appeal:

(1) Whether the court abused its discretion by refusing to sentence appellant in the mitigated range; and

(2) Whether the court erred by refusing to credit appellant with time spent on electronic home monitoring while on pretrial release.

For the reasons discussed below, the court did not abuse its discretion by not imposing a sentence in the mitigated range, and correctly refused to credit appellant with time spent on electronic home monitoring.

## FACTS

When appellant entered an open guilty plea on April 30, 2001, he stipulated to the facts set forth in the affidavit of probable cause. These facts are as follows:

On January 20, 2001, Officers Gilbert and Johnson of the Newtown Township Police Department were dispatched to 204 East Chelsea Circle to meet with an employee of the Adelphia Cable Company. Appellant resided at this address with his mother in a second story

---

6. The panel consisted of the Honorable Frank T. Hazel, the Honorable Charles C. Keeler and the Honorable George Koudelis.

apartment. The officers spoke with a Leonard Brown and a Sean McGlone of Adelphia Cable Company who indicated that they had been attempting to speak with a resident (appellant) about a problem with the cable service. Further investigation would reveal that the cable line that passed through the appellant's apartment had been cut. The officers knocked on appellant's door, announced their presence, and the reason for their visit. There was no response but the officers heard voices and people moving about inside the apartment.

At that time, Officer Gilbert, with the help of one of the cable company employees, placed a ladder up to a balcony located on the side of the apartment and climbed up to the balcony. Officer Gilbert then knocked on the glass balcony door and again announced that he was a police officer and the purpose of his visit. Shortly thereafter, Officer Gilbert noticed the barrel of a shotgun parting the curtains on the other side of the glass door. Officer Gilbert dove for cover just as a shotgun blast came through the glass door. Officer Gilbert then returned fire. Approximately 15 to 20 minutes later, appellant surrendered to the police and was arrested and charged as described above.

## DISCUSSION

### I. *Appellant's Sentence*

Appellant first argues that the court abused its discretion by failing to impose a sentence in the mitigated range despite being presented with mitigating evidence at the sentencing hearings.

## A. Standard of Review

In determining sentencing, the court must examine the circumstances of the crime and the individual defendant's background in addition to the sentencing guidelines. *Commonwealth v. Edrington,* 490 Pa. 251, 255-56, 416 A.2d 455, 457 (1980). The imposition of a sentence is within the sound discretion of the sentencing judge. *Commonwealth v. Childs,* 445 Pa. Super. 32, 37, 664 A.2d 994, 996 (1995). An abuse of discretion is not merely an error in judgment, but occurs when the sentencing court misapplies or overrides the law, exhibits partiality, bias or ill will, or reaches a conclusion that is manifestly unreasonable. *Commonwealth v. Spencer,* 344 Pa. Super. 380, 394, 496 A.2d 1156, 1164 (1985). The court must exercise its discretion within the following procedural limits: (1) the court must have sufficient and accurate information; (2) the court must consider the defendant's individual characteristics and the circumstances of the particular offense; and (3) the court must state on the record the reasons for its sentence. *Commonwealth v. Martin,* 466 Pa. 118, 131-32, 351 A.2d 650, 656 (1976).

Review of the discretionary aspects of sentence is governed by 42 Pa.C.S. §9781(c) which provides that an appellate court shall vacate the sentence and remand to the sentencing court if it finds:

"(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

"(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where

the application of the guidelines would be clearly unreasonable; or

"(3) the sentencing court sentenced outside the guidelines and the sentence is unreasonable."

The sentence imposed was within the guidelines at the bottom end of the standard range, therefore, subsection (2) is the only applicable basis for relief. Applying the previously described standard of review, the record clearly demonstrates that the court did not abuse its discretion by unreasonably applying the sentencing guidelines in refusing to impose a sentence in the mitigated range.

## B. The Court's Findings at Sentencing

The substance of appellant's argument in favor of imposing a sentence in the mitigated range was that appellant suffered from a mental illness.[7] At sentencing, appellant provided the court with voluminous documentation and extensive testimony regarding his mental illness. The court recognized that appellant suffered from a mental illness, but also noted that appellant had failed to seek treatment for his mental illness, and speculated that had appellant received treatment, the incident may never have taken place. (N.T. 7/10/2001 at 43.) The court also heard testimony from Officer Gilbert, the victim of

---

7. Appellant argued the following additional mitigating factors: (1) further confinement would entail excessive hardship to appellant; (2) the conduct of the victim [Officer Gilbert] provoked the commission of the crimes; and (3) the criminal conduct was the result of circumstances unlikely to recur.

the offense (N.T. at 26-29), and recognized that Officer Gilbert could have easily been killed.

The sentence imposed was almost at the bottom end of the standard range and was clearly an appropriate sentence. A sentencing court does not abuse its discretion by choosing one guideline range over another, and need not state the reasons for its decision. *Commonwealth v. Wright,* 411 Pa. Super. 111, 600 A.2d 1289 (1991). In non-capital cases, a sentencing court's failure to adequately consider mitigating factors is not subject to appellate review provided that the sentence fell within the guidelines. *Commonwealth v. Yanoff,* 456 Pa. Super. 222, 690 A.2d 260 (1997); *Commonwealth v. Hobson,* 413 Pa. Super. 29, 604 A.2d 717 (1992). The weight that the sentencing court gives to each consideration is not subject to appellate review, despite the fact that another judge may have weighed each factor differently and imposed a different sentence. *Commonwealth v. Green,* 494 Pa. 406, 410, 431 A.2d 918, 920 (1981); *Commonwealth v. Wareham,* 259 Pa. Super. 527, 531, 393 A.2d 951, 953 (1978).

The above authority stands for the proposition that a court need not impose a mitigated range sentence simply because the court recognizes the presence of mitigating factors. In the instant matter, the record shows that the court carefully considered all sentencing options and attempted to fashion a sentence that would balance the need for appellant to receive treatment for his mental illness against the need for punishment based on the severity of the offense (that a police officer was almost killed in the line of duty). Nothing in the record demonstrates that the application of the sentencing guidelines

was unreasonable, or demonstrates that the court abused its discretion. Given the information presented to the court, the sentence imposed was well within the permissible range of sentences.

## II. *Credit for Time Spent on Electronic Home Monitoring*

The Pennsylvania Supreme Court's decision in *Commonwealth v. Chiappini,* 566 Pa. 507, 782 A.2d 490 (2001), necessitated an inquiry into whether appellant was entitled to credit for time spent on electronic home monitoring while on pretrial release. The court declined to credit appellant with such credit for two reasons: (1) appellant, convicted of aggravated assault, was ineligible to serve a sentence of intermediate punishment, and therefore, could not receive credit for time spent on electronic home monitoring (an intermediate punishment) that was imposed as a condition of bail; (2) appellant was unable to demonstrate that the Delaware County electronic home monitoring program was similar to the Lackawanna County electronic home monitoring program addressed in *Chiappini.*

### A. The *Chiappini* Decision

In *Chiappini,* the Pennsylvania Supreme Court addressed whether a defendant could receive credit towards his sentence for time spent in a home confinement/electronic home monitoring program.[8] *Chiappini,* 566 Pa. at

---

8. In *Chiappini,* the defendant was placed on the program during the pendency of his motion for arrest of judgment and/or new trial following his initial conviction. *Id.,* 566 Pa. at 519, 782 A.2d at 497.

519, 782 A.2d at 497. The defendant therein argued, and a plurality of the Pennsylvania Supreme Court agreed,[9] that he was entitled to such credit because such time constituted "custody" within the meaning of 42 Pa.C.S. §9760.[10]

In addressing the defendant's claim, the Supreme Court looked to the definition of the term "custody" in section 9760 and concluded that the term "custody" includes restraints on liberty other than imprisonment.[11] *Chiappini,* 566 Pa. at 525, 782 A.2d at 500. The *Chiappini* court then granted the defendant credit for the time spent in the Lackawanna County program after examining the specifics of the Lackawanna County home confinement/ electronic home monitoring program and concluded that the program contained sufficient restraints on a participant's liberties so as to constitute "custody."[12] *Id.,* 566 Pa. at 526, 782 A.2d at 501.

---

9. Only Justices Zappala, Flaherty and Newman concluded that the Lackawanna County program constituted "custody." Justices Cappy, Castille and Saylor concluded that the Lackawanna County program was not "custody." Justice Nigro favored granting the defendant the credit on equitable grounds but did not conclude that the Lackawanna County program constituted "custody."

10. 42 Pa.C.S. §9760(1) states in pertinent part: [c]redit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence and pending resolution of an appeal.

11. The court stated that the term "custody" encompasses the term "imprisonment" and that "imprisonment" is but one form of "custody." *Chiappini,* 566 Pa. at 525, 782 A.2d at 500.

12. The *Chiappini* court based its conclusion on the following specifics of the Lackawanna County program: (1) the program was run

The *Chiappini* court limited its decision to the Lackawanna County program and held that other programs must be examined on an individual case basis. *Id.,* 566 Pa. at 525 n.12, 782 A.2d at 501 n.12. To examine other programs, the Supreme Court stated that a court should examine the extent of control exercised over the participant and the restrictions on the participant's liberty while on the program. *Id.,* 566 Pa. at 525, 782 A.2d at 501.

### B. Eligibility for the Credit Under the County Intermediate Punishment Act

In the instant matter, the Commonwealth argued that appellant should not receive the credit against his sentence because, due to the nature of the offense for which appellant was convicted (aggravated assault), the court did not have discretion to impose a sentence of electronic home monitoring, therefore, it would be inappropriate to credit appellant's sentence with such time spent while on pretrial release. Although this argument was noted by the dissent in *Chiappini,* the *Chiappini* court did not base its decision on this argument because it was never argued and briefed. *Id.,* 566 Pa. at 526 n.13, 782 A.2d at 501 n.13.

---

by the Lackawanna County prison authorities; (2) a participant in the program was considered an inmate of the Lackawanna County prison and his residence would be considered a jail without bars; (3) the participant was required to wear an ankle bracelet that was connected to a monitoring device; (4) the participant was required to cooperate with home detention staff and permit them to enter the residence any time of the day or night. *Chiappini,* 566 Pa. at 519, 782 A.2d at 497.

Under the Pennsylvania Sentencing Code (42 Pa.C.S. §9701 et seq.) and the County Intermediate Punishment Act (42 Pa.C.S. §9801 et seq.), the court could not have sentenced appellant to electronic home monitoring for the aggravated assault conviction, nor could appellant have harbored any expectation of receiving such a sentence.

*42 Pa.C.S. §9763(b)(17)* classifies electronic home monitoring as a sentence of intermediate punishment.

*42 Pa.C.S. §9804(b)(1)* states: "[n]o person other than an eligible offender shall be sentenced to a county intermediate punishment program."

*42 Pa.C.S. §9802* states: "an eligible offender is any person convicted of an offense who would otherwise be sentenced to a county correctional facility, who does not demonstrate a past pattern of violent behavior and who would otherwise be sentenced to partial confinement pursuant to section 9724 or total confinement pursuant to section 9725. The term does not include an offender convicted of aggravated assault." *Id.*

Construing these statutes together, it is clear that the legislature did not intend for those convicted of certain serious enumerated offenses (including aggravated assault) to be eligible to serve intermediate punishments such as electronic home monitoring. In *Commonwealth v. DiMauro, infra,* the Superior Court reached a similar conclusion and held that such a sentence of electronic home monitoring for an aggravated assault conviction was an illegal sentence under the sentencing code.[13] *Com-*

---

13. The Superior Court rejected defendant's argument that electronic home monitoring was a sentence of partial confinement under 42 Pa.C.S. §9755(a) rather than an intermediate punishment.

*monwealth v. DiMauro,* 434 Pa. 129, 131, 642 A.2d 507, 508 (1994).

Had the court re-sentenced appellant, the court could not have imposed electronic home monitoring as a part of appellant's sentence. To credit appellant's sentence with such time because it was imposed as a condition of pretrial release would be inappropriate and contrary to the intent of the Sentencing Code. As noted by the dissent in *Chiappini,* requiring the court to reduce the sentence it imposed by crediting time spent on bail in a restricted release program that the General Assembly explicitly directed was unavailable as a sentencing option, ignores the Sentencing Code and depreciates the seriousness of the offense. *Chiappini,* 566 Pa. at 533-34, 782 A.2d at 506 (Castille, J., dissenting). For this reason, the court correctly refused to credit appellant's sentence with time spent on electronic home monitoring.

### C. The Delaware County Electronic Home Monitoring Program

At the September 20, 2001 hearing, the three-judge panel heard testimony from Philip F. Pisani, the director of pretrial bail services unit for the Delaware County courts. Mr. Pisani described the rules and regulations of the Delaware County electronic home monitoring program, and provided testimony about the details of appellant's participation in the program.

Although like the Lackawanna County program, the Delaware County program monitored participants by requiring them to wear an ankle bracelet that would send

a signal through the telephone if the participant traveled beyond a certain distance from the telephone, the administration of the programs in the two counties was significantly different. The Delaware County program is administered by the court of common pleas and not associated with the prison authorities. (N.T. 9/20/2001 at 60-61.) Participants in the Delaware County program are not considered inmates of the Delaware County Prison. (N.T. at 61.) Unlike the Lackawanna County program, participants, including appellant, expressly acknowledge that they will not receive credit against their sentences for time spent in the program. (N.T. at 48-49.) In addition, participants in the Delaware County program are not subject to warrantless searches of their residences. (N.T. at 61-62.) Instead, under the Delaware County program, if an official suspected a violation of a program condition, he or she would first knock for admittance. (N.T. at 63.) If they were denied entry, the official would then attempt to obtain an order from a judge permitting him or her to enter. (N.T. at 63.)

The Delaware County program routinely permits participants to engage in many of their regular activities outside the home so long as the participant provides documentation and secures approval in advance. Participants are normally permitted to leave their residence to go to work even in cases where they are employed outside the Commonwealth. (N.T. at 43-44, 66.) Requests to leave the home for activities other than employment, medical and legal visits are handled by the pretrial bail services unit of the court on a case-by-case basis. (N.T. at 70.) Approval is based upon the nature of the charges, the nature of the activity, the participant's prior record and

the participant's past level of cooperation with the court. (N.T. at 70.) Subject to advance approval and verification, participants have been permitted outside their homes to attend to a variety of personal activities, religious activities and family activities.[14] (N.T. at 67-70.) In cases of less serious violations of the program rules, participants are not always returned to jail but may be given a one week "black out" wherein the participant is only permitted to leave the house for pre-authorized medical, religious or employment reasons. (N.T. at 72.)

Reviewing the specifics of appellant's participation in the program, Mr. Pisani testified that appellant would have been permitted to leave the house to go to work had he been employed. (N.T. at 46.) In addition, he was permitted to leave his home for visits to his doctor and lawyer. (N.T. at 43.) Had he wished to do so, appellant would have been given permission to attend religious services or visit with his relatives. (N.T. at 46-47.) The record showed that on March 26, 2001, appellant requested and was granted permission to go shopping at the King of Prussia Mall from 10:30 a.m. until 1 p.m. (N.T. at 55.) Appellant did not return until 1 a.m. and put on a one-week "black out." (N.T. at 72.) The record revealed only one occasion in the 250 days appellant was on electronic home monitoring that he was denied per-

---

14. In addition to the activities outside the home already described, examples of activities that participants were routinely permitted to attend outside the home include religious services, Bible studies, church activities, food shopping, post office, trips to the auto mechanic, haircuts, family gatherings, attending their children's sporting events, funerals, weddings, etc. (N.T. at 67-70.)

mission to leave his residence for any reason. (N.T. at 72.)

Based on the above analysis of the Delaware County program, it is clear that the program does not constitute "custody" within the meaning of 42 Pa.C.S. §9760 and the *Chiappini* decision. While participants in the program are subject to increased supervision, a participant who complies with the program's rules and regulations is free to leave his or her residence to pursue most of the non-criminal activities he or she pursued prior to entering the program. Other than increased supervision and being required to document his or her whereabouts, the restraints on liberty from participation in the program are minimal. Individuals on any pretrial release program, whether or not electronic home monitoring has been imposed, can expect to be under some level of court supervision and can expect to be returned to jail if they violate conditions thereof. Just as the term "custody" encompasses the term "imprisonment," the term "supervision" encompasses the term "custody"; thus, not all forms of "supervision" rise to the level of "custody." The electronic home monitoring program employed by Delaware County does not become "custody" simply because it imposes significant supervision over the participants.

Unlike the program in Lackawanna County, participants in the Delaware County program can resume many of their normal activities as long as they are verifiable and documented. In appellant's case, he was permitted to leave his residence to go shopping at a mall simply by making a request. Although appellant's personal liberties were limited by virtue of being on pretrial release, such limitations cannot be said to have imposed such a

restraint on appellant's liberty so as to constitute "custody." Under the analysis mandated by *Chiappini,* the Delaware County electronic home monitoring program does not constitute "custody" and the court correctly declined to credit appellant with time spent on the program against his sentence.

## CONCLUSION

For all of the foregoing reasons, the judgment of sentence should be affirmed.