J-S73023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA B. FETTEROLF, | : | |
| | : | |
| Appellant | : | No. 1071 MDA 2017 |

Appeal from the PCRA Order June 8, 2017
In the Court of Common Pleas of Union County Criminal Division at No(s):
CP-60-CR-0000045-1999,
CP-60-CR-0000046-1999

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                                     **FILED APRIL 26, 2018**

Appellant Joshua B. Fetterolf appeals *pro se* from the Order denying his Petition filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541-46 ("PCRA").  He avers, *inter alia*, that counsel provided ineffective assistance at his violation of probation ("VOP") hearing, and that the VOP court denied him his right to allocution prior to imposing sentence.  After careful review, we affirm the denial of PCRA relief.

We gleaned the following relevant factual and procedural history from the certified record.  Appellant was convicted in 1998 and 1999 of various crimes including, relevant to this appeal, two counts of Unlawful Restraint. The court sentenced him to an aggregate term of 66 months' to 167 months' incarceration, followed by an aggregate term of 10 years' probation.  He was released from prison on February 4, 2013.  As a result of the underlying

_____
* Retired Senior Judge assigned to the Superior Court.

Unlawful Restraint convictions, Appellant was subject to special probation conditions which prohibited him from imbibing in alcohol, owning weapons, and partaking in assaultive behavior.

On September 29, 2014, Appellant's wife, Delann Fetterolf, filed a Petition for Protection from Abuse ("PFA"), alleging numerous instances over several months in which Appellant had physically abused her.[1] The court granted a temporary PFA Order, and at a hearing on October 9, 2014, the court granted the PFA Petition.

On September 29, 2014, the Union County Sheriff contacted Appellant's supervising probation agent, Jonathan Lehr, to inform him that he was going to serve Appellant with a temporary PFA Order. The sheriff told Agent Lehr that Appellant had allegedly beaten his wife with an ASP

_____

[1] Delann asserted in her PFA Petition, and confirmed on direct examination at the VOP hearing, that on September 28, 2014, Appellant threatened to beat her, punched her twice in the ribs, once on the arm, and confined her to a truck where the door could not be opened from the inside. When she was able to get the window down, Appellant pulled her hair to get her back in the truck. Hours later, she was able to get out of the truck and "took off and hid." N.T., 11/3/14, at 20. Three weeks before, he had punched her, breaking her nose and causing multiple bruises all over her head and swollen knees from hitting her with a baton, rendering her unconscious. Previously, in February 2014, Appellant had beaten her, giving her two black eyes and rendering her unconscious. In December 2013, Delann jumped out of a moving truck because Appellant would not let her out. *Id*. The court entered a temporary PFA Order, and a final Order after a hearing on October 9, 2014. *See* N.T., 11/3/14, at 62 (where judge took judicial notice of the PFA proceedings over which he had presided and acknowledged that the PFA hearing had not been transcribed).

baton.[2] When contacted by Agent Lehr, Appellant told the agent that he had used cocaine the previous day. Because of that admission, as well as the allegation that Appellant possessed a prohibited weapon and assaulted his wife, Agent Lehr and other officials searched Appellant's house. During the search, Agent Lehr found a collapsed ASP baton in the pocket of Appellant's coat hanging in the bedroom, a pocketknife in a dresser drawer, and five beers in a six-pack in the closet he shared with his wife. On October 6, 2014, Agent Lehr spoke with Delann who told him that the statements she made in the PFA Petition were true and that Appellant had physically assaulted her on several occasions. *See* N.T., 11/3/14, at 56. Agent Lehr then detained Appellant.

On October 10, 2014, the Commonwealth filed a Motion to Revoke Appellant's probation alleging multiple technical violations, including possessing an offensive weapon (baton), possessing alcohol, and assaulting his wife. On October 17, 2014, the court issued an Order scheduling a hearing on the VOP Petition for November 3, 2014. Brian Ulmer, Esq., from the Public Defender's Office represented Appellant throughout the VOP proceedings.

---

[2] An ASP collapsible baton is a metal weapon that extends to approximately 30 inches in length and is used by law enforcement and marketed to the public as a self-defense weapon.

On November 3, 2014, at the start of the hearing, Mr. Ulmer acknowledged that a *Gagnon I*[3] hearing had not yet occurred. Due to the court's schedule, the court continued the hearing to later in the day. Shortly after the court reconvened, it took another short recess for Appellant to consider an offer from the Commonwealth. Thirty minutes later, Appellant declined the offer and the court indicated that it would proceed "to the hearing." N.T., 11/3/14, at 13. Just as the Commonwealth was calling its first witness, Agent Lehr, to the stand, the Court recessed for a lunch break. *Id*.

When the court reconvened 45 minutes later, it called a sidebar at which the attorneys and the court discussed the evidence about which Agent Lehr would testify that supported the filing of the VOP Petition. *Id*. at 14-15. The hearing then began with the Commonwealth calling Delann to the stand. Delann read parts of her PFA Petition, and verified the accuracy of the statements in the Petition. *Id*. at 18. On cross-examination, Delann asserted that she had lied in her PFA Petition. *Id*. at 27.

In addition to attempting to recant her allegations made in her PFA Petition, Delann also testified that hospital medical records would show that, with respect to one of the seven domestic abuse incidents, she had told

---

[3] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

hospital personnel that her injuries resulted from a four-wheel ATV accident. *Id*.

Agent Lehr testified regarding the search conducted at Appellant's house, the items recovered, and his conversation with Delann one week after she had filed the PFA Petition in which she told Agent Lehr that the allegations in the PFA Petition were true. *See id*. at 43-61.

After counsel presented argument, the VOP court revoked Appellant's probation and began to impose sentence, indicating that it would sentence Appellant to a term of state incarceration of 2½ to 5 years' incarceration on the first of the two counts. The Commonwealth then interrupted to point out that Appellant was entitled to have an opportunity to speak on his own behalf before the court imposed sentence. The court agreed, then stated it was revoking Appellant's probation on both counts, and asked Appellant and his counsel for allocution.

Appellant's counsel and Appellant himself then spoke at length. Appellant allocuted about the deal the Commonwealth would not give him; his wife's testimony recanting her allegations and how his wife was smiling and winking at him during the hearing; his interaction with Agent Lehr and Agent Cline; his love for his wife; and his desire for treatment rather than state incarceration. *See id*. at 77–81. The court acknowledged Appellant's lengthy allocution, and then sentenced Appellant to an aggregate term of 5 to 10 years' incarceration (2½ to 5 years on each underlying indecent

assault conviction). Appellant did not file a post-sentence motion challenging the allocution procedure.

This Court affirmed the Judgment of Sentence, and the Supreme Court denied allowance of appeal. ***Commonwealth v. Fetterolf***, 1932 & 1933 MDA 2014 (Pa. Super. filed July 20, 2015) (unpublished memorandum), *appeal denied*, 132 A.3d 456 (Pa. 2016).

Appellant filed a *pro se* PCRA Petition on June 17, 2016, alleging ineffective assistance of VOP counsel[4] for failing to obtain and proffer the medical records about which his wife had testified. The court appointed Mark H. Lemon, Esq. to represent Appellant and informed Mr. Lemon that he had 60 days to file an amended petition or a no-merit letter.

On September 21, 2016, Counsel filed a Motion to Withdraw and a no-merit ***Turner***-***Finley***[5] letter. The court issued a Rule to Show Cause to the Commonwealth on September 26, 2014. On November 14, 2016, the court signed an Order granting counsel's Petition to Withdraw.[6]

On November 15, 2016, the PCRA court granted Appellant's *pro se* Motion for Leave to file an Amended Petition. In his Amended Petition,

---

[4] Brian Ulmer, Esq., represented Appellant in his proceedings before the VOP court and on appeal from the revocation sentence.

[5] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[6] The court entered the Order granting Attorney Lemon's Petition to Withdraw on the docket on November 15, 2016.

Appellant again asserted VOP counsel had provided ineffective assistance for failing to investigate and obtain Delann's hospital records. He also averred that VOP counsel had been ineffective for failing to object to the lack of a **Gagnon I** hearing, and the court failed to provide him with the opportunity to allocute prior to imposing the revocation sentence. Appellant also requested the appointment of new counsel "as he is entitled to a fully counseled first PCRA petition and [PCRA counsel] was permitted to withdraw." Amended PCRA Petition, filed 12/22/16, at 7.[7] The PCRA court issued a Rule to Show Cause, and the Commonwealth filed a Response to Appellant's Amended PCRA Petition.

On May 16, 2017, the PCRA court issued a Pa.R.Crim.P. 907 Notice of Intent to Dismiss the Amended Petition and an Opinion, to which Appellant filed a Response. On June 8, 2017, the PCRA court denied Appellant's Amended Petition.

Appellant timely appealed and filed a Pa.R.A.P. 1925(b) Statement.[8] In lieu of a Pa.R.A.P. 1925(a) Opinion, the PCRA court referred this Court to its May 16, 2017 Opinion.

---

[7] Appellant did not challenge the PCRA court's decision to allow PCRA counsel to withdraw.

[8] This Court granted Appellant's Motion to Proceed *In forma Pauperis*. Appellant did not request the appointment of counsel for this appeal.

**Issues**

Appellant raises the following issues for our review:

I.    Was revocation counsel ineffective for failing to object or move to quash the petition to revoke probation for the lack of a **Gagnon I** hearing?

II.   Was revocation counsel ineffective at the revocation of probation hearing for failing to investigate and obtain the medical records of [Appellant's] wife?

III.  Was [Appellant] denied his right to allocution when the revocation court began imposing sentence without asking if [Appellant] wished to speak, where after belatedly permitting [Appellant] to make a statement, the court imposed the same sentence it was already in the process of imposing prior to allocution?

IV.   Was [Appellant] denied a fully-counseled first PCRA petition, in violation of Pa.R.Crim.P. 904?

Appellant's Brief at 1 (reordered).

**Standard/Scope of Review**

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

**Issues I and II:  Ineffective Assistance of VOP Counsel**

Appellant's first two issues aver ineffective assistance of VOP counsel. The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).  "[T]he burden of demonstrating ineffectiveness rests on [A]ppellant." *Id.*  To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:  "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003).  Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

### Issue I:  Failure to object to lack of *Gagnon I* hearing

Appellant avers that VOP counsel provided ineffective assistance of counsel by failing "to object or move to quash the petition to revoke probation for the lack of a *Gagnon I* hearing."  Appellant's Brief at 4.  He contends that he "was prejudiced because the lack of a preliminary hearing denied him the opportunity to obtain his wife's medical records." *Id*.

The U.S. Supreme Court concluded in *Gagnon*, *supra*, that "due process required a two[-]step process for revocation of probation or parole:

first, a probable cause hearing at the time of the initial detention (***Gagnon***

***I***); and later a full determination hearing (**Gagnon II**)." ***Commonwealth***

***v. McDermott***, 547 A.2d 1236, 1238 n.1 (Pa. Super. 1988) (citation

omitted). ***See also Commonwealth v. Ferguson***, 761 A.2d 613, 617 (Pa.

Super. 2000) (reviewing the two-step VOP revocation hearing process

required by ***Gagnon***).

In a ***Gagnon II*** hearing, a more thorough review of the facts occurs

to establish that a probationer violated one or more of the conditions of his

or her probation. "It is this fact that must be demonstrated by evidence

containing 'probative value.'" ***Ferguson***, ***supra*** at 617 (quoting

***Commonwealth v. Kates***, 305 A.2d 701, 710 (Pa. 1973)). It is only after

it is determined that the probationer did violate the conditions that the

question of whether the probationer should be recommitted to prison is

considered. ***Ferguson***, ***supra*** at 617. "Thus, the ***Gagnon II*** hearing is

more complete than the ***Gagnon I*** hearing in affording the probationer

additional due process safeguards[.]" ***Id***.

Where, as here, a probationer is accused of technically violating his

probation, *i.e.*, by violating a condition of his probation, courts are required

to conduct both a ***Gagnon I*** and ***Gagnon II*** hearing.[9] "The purpose of the

---

[9] Where a probationer is convicted of a crime, and that conviction is the basis of the VOP hearing, a court need not conduct a ***Gagnon I*** hearing because the conviction establishes the probable cause necessary to proceed
*(Footnote Continued Next Page)*

requirement of a ***Gagnon I*** hearing is … to ensure against detention on allegations of violations that have no foundation of probable cause." ***Commonwealth v. Perry***, 385 A.2d 518, 520 (Pa. Super. 1978). However, "if before his [ ] probation is revoked a [ ] probationer has not complained of the lack of a ***Gagnon I*** hearing, he has already suffered the harm that the omission allegedly caused; since the substance of the revocation proceeding is not affected by the omission, the … probationer will not be heard to complain later." ***Perry***, 385 A.2d at 520.

In the instant case, the record is devoid of any indication that there was a pre-revocation hearing upon Appellant's initial detention that would qualify as a ***Gagnon I*** hearing. Although there was discussion of the evidence at a sidebar before the hearing that arguably established probable cause to proceed, the sidebar does not equate to a ***Gagnon I*** hearing. In the context of our ineffectiveness analysis, we conclude that counsel's failure to insist on a ***Gagnon I*** hearing presented an issue of merit, thus satisfying the first prong of the ***Pierce*** ineffectiveness test. However, we cannot conclude that Appellant suffered prejudice because of that omission.

Appellant avers that he suffered prejudice by the failure to hold the ***Gagnon I*** hearing because if it had been held upon his initial detention, the issue of his wife's medical records pertaining to one incident would have

*(Footnote Continued)* ───────────────

to a ***Gagnon II*** hearing. The basis of the VOP hearing here did not involve a new conviction.

- 11 -

arisen, and he would have been able to obtain those records for his ***Gagnon II*** hearing. Appellant also implies that because his wife recanted her testimony, the ***Gagnon I*** hearing would have shown that there was no probable cause to support the VOP Petition. Appellant's argument is speculative and unavailing.

Delann's PFA Petition, her statements to police officers on September 29, 2014, and to Agent Lehr on October 6, 2014, as well as Agent Lehr's testimony about the search and seizure of prohibited items from Appellant's house, was the evidence that the Commonwealth would have presented at the ***Gagnon I*** hearing upon Appellant's initial detention. The Commonwealth presented that same evidence at the hearing on November 3, 2014, that established probable cause that Appellant had violated the conditions of his probation. As the court noted during the VOP hearing:

> The primary issue is the possession of the baton, a weapon that is typically used by law enforcement to strike individuals to such a degree that it incapacitates them. It is an offensive weapon which is why it's typically used only by law enforcement and has no business in – anywhere near a convicted felon of two sexual assaults, one as a juvenile and one as an adult.
>
> I don't buy your wife's story. I think what's more accurate is the assault occurred – well, first let's go back to how you got possession of it. You found it at work when your wife wasn't even there, and then the whole "you gave it to her, but she got it out of the car," no. If you listen to her testimony, you gave it to her. … [I]t was found in someone else's car and you gave that to your wife and it ended up concealed at your house.
>
> Then her testimony was that it came out in a fight, and the two of you are wrestling over this; and she left and didn't see the baton again. It had been extended, I believe … and when it was

found by Agent Lehr, it was collapsed, when your wife said she hadn't seen it again. It was concealed in your coat pocket. And she said she concealed it in the cat food, never once said your coat pocket. It is clear to the Court beyond any doubt, … that you possessed an offensive weapon that you had no business in the possession of.

N.T., 11/3/14, at 74.

After extensive review, we conclude that "since the substance of the revocation proceeding was not affected by the omission" of the **Gagnon I** hearing, **Perry**, 385 A.2d at 520, Appellant cannot prove that "but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." **Fulton**, **supra** at 572. Accordingly, this issue warrants no relief.

### Issue II: Failure to obtain medical records

Appellant also avers counsel was ineffective for failing to "investigate, obtain, and present the medical records" that Delann had testified would show that she told hospital personnel after one incident that she injured herself in an ATV accident. Appellant's Brief at 6. Appellant avers that those "records were vital to exonerate [Appellant] of the assaultive behavior violation." **Id**. He further asserts that "counsel had at the very least a duty to investigate the records to determine if they supported a claim that [Appellant] had not in fact assaulted Ms. Fetterolf, which was the key revocation allegation." **Id**. at 7.

The PCRA court addressed this issue as follows:

[Appellant] attempts to argue that if the medical records of his wife were obtained and presented it would show inconsistencies or consistencies in some of her statements.

The Court previously addressed the inconsistencies in Ms. Fetterolf's testimony. It was clear to the court that Ms. Fetterolf was terrified of the [Appellant]. That was patently obvious during the hearing.

In addition, Ms. Fetterolf gave contradicting statements throughout her testimony. One more piece of contradiction, such as statements made out of Court to treating physicians regarding how she sustained injuries, would not have changed the Court's opinion.

One of the key factors to obtain PCRA relief is that the ineffectiveness of counsel would have resulted in a different outcome. In this case, it would not have.

PCRA Ct. Op., dated 5/16/17, at 3.

We agree with the PCRA court's analysis. Further, as the Commonwealth states, "[t]he decision of Attorney Ulmer not to investigate, obtain, and present the medical records of Delann Fetterolf could have no effect on the court's finding that the Appellant possessed the baton in violation of his probation." Commonwealth's Brief at 5. Because Appellant is unable to show that, but for counsel's actions or inaction, the outcome of the VOP hearing would have been different, he has failed to meet the third prong of the ineffectiveness test. *See Fulton*, *supra*; *Jones*, *supra*. Accordingly, Appellant's claims of ineffective assistance of VOP counsel do not warrant relief.

**Issue III: Allocution at sentencing**

In his third issue, Appellant contends that "[t]he belated allowance of allocution was a *de facto* denial of the right of allocution because the court had already determined what sentence it was imposing." Appellant's Brief at 11. He contends that because "the court imposed the same exact sentence it was imposing prior to being interrupted, … [t]he gesture of the [c]ourt in belatedly allowing allocution 'was an empty one for the sentence had already been determined.'" *Id*. (quoting **Commonwealth v. Knighton**, 415 A.2d 9, 12 (Pa. 1980)). Appellant further avers that "[i]t was a 'hollow gesture' for the [c]ourt to stop in the middle of imposing sentence in an awkward attempt to grant delayed allocution." Appellant's Brief at 11 (quoting **Commonwealth v. Brown**, 492 A.2d 745, 751-52 (Pa. Super. 1985)).

Our rules of criminal procedure provide that "[a]t the time of sentencing, the judge shall afford the defendant the opportunity to make a statement in his or her behalf and shall afford counsel for both parties the opportunity to present information and argument relative to sentencing." Pa.R.Crim.P. 704(C)(1). However, "in order to preserve a claim of error pertaining to the right of allocution, the defendant must raise the claim before the trial court at the time of sentencing or in a post-sentence motion, or suffer waiver of the claim on appeal." **Commonwealth v. Hardy**, 99 A.3d 577, 579 (Pa. Super. 2014) (citing **Commonwealth v. Jacobs**, 900 A.2d 368, 372 (Pa. Super. 2006) (*en banc*)).

Our review of the record indicates that Appellant did not raise the allocution error he asserts here in a post-trial motion or on appeal. He has, thus, waived the issue.

Moreover, even if he had not waived the issue, we would conclude Appellant's challenge is without basis in fact and law. As the PCRA court noted, Appellant's averment that he was denied the right to allocution prior to the court imposing sentence is "patently false as set forth in the transcript of the revocation proceedings." Trial Ct. Op at 2. **See** N.T. at 77–81, discussed *supra* at 5. In addition, the cases upon which Appellant relies are inapposite.[10] Thus, even if Appellant had not waived the issue, he would not be entitled to relief as the issue is completely without merit.

**Issue IV: Denial of Fully-Counseled PCRA Petition**

In his fourth issue, Appellant asserts that he was denied a fully-counseled PCRA Petition because "after counsel withdraws and new claims are presented in a *pro se* amended PCRA petition, [ ] he is entitled to the assistance of counsel in reviewing the new claims." Appellant's Brief at 13. In support, Appellant relies on **Commonwealth v. Torres**, 101 A.3d 781 (Pa. 2014)(*per curiam*).

---

[10] In **Knighton**, **supra**, the appellant's sentence had been decided by a "sentencing council" prior to the sentencing hearing and the court allowed appellant to allocute after it had imposed the sentence. In **Brown**, **supra**, the court denied allocution altogether. Appellant's case includes neither of these situations: Appellant was provided, and fully exercised, his allocution rights.

*Torres* is factually and legally distinguishable from the instant case. In *Torres*, the appellant filed an amended PCRA petition *pro se* after the court had filed its Pa.R.Crim.P. 907 Notice and allowed counsel to withdraw. The PCRA court decided that the new claims raised by the appellant required a hearing, but refused to appoint new counsel to represent the appellant at that hearing. On appeal, the Pennsylvania Supreme Court remanded for the appointment of counsel and a new hearing, concluding that "because th[e appellant's] claims were timely and because the PCRA court granted an evidentiary hearing on those claims, our rules of criminal procedure dictate that counsel should have been appointed. *See, e.g.,* Pa.R.Crim.P. 904(D) (providing for appointment of counsel for indigent defendant with respect to second or subsequent PCRA petition **where evidentiary hearing is required**)[.]" *Torres*, 101 A.3d at 781 (emphasis added).

Here, the PCRA court determined that Appellant's "new" claims did not warrant a hearing. Accordingly, the court was not required to appoint new PCRA counsel.

Based on our review and disposition of the issues Appellant raised in this appeal of the denial of his amended petition, Appellant's claim that he was "denied a fully-counseled first PCRA petition" warrants no relief.

Appellant's Brief at 13.[11] A first-time PCRA petitioner is entitled to the appointment of counsel pursuant to Pa.R.Crim.P. 904(C). ***Commonwealth v. Evans***, 866 A.2d 442, 445-46 (Pa. Super. 2005). ***See also Commonwealth v. Albrecht***, 720 A.2d 693, 699 (Pa. 1998) ("The denial of PCRA relief cannot stand unless the petitioner was afforded the assistance of counsel."). Counsel appointed to represent a petitioner seeking post-collateral review is required to independently review the record to ascertain if the petitioner's issues are meritorious. ***Pennsylvania v. Finley***, 481 U.S. 551, 558 (1987). If counsel believes that the issues have merit, counsel is obligated to provide an advocate's brief. ***Id***. If, however, counsel believes, after conducting an independent review of the record, that the issues have no merit, counsel may seek to withdraw following the procedures outlined in ***Turner***-***Finley***. Once a PCRA court allows counsel to withdraw, the court is not obligated to appoint new counsel when the now-*pro se* petitioner raises new claims unless the court believes a hearing on those claims is required. ***Torres***, ***supra***.

Here the court was able to address each of the issues Appellant adequately raised and developed in his *pro se* Amended Petition. Our review of the record and analysis of the issues support the PCRA court's determination that the appointment of new PCRA counsel was not required

---

[11] Appellant is not alleging ineffective assistance of PCRA counsel and is not challenging the PCRA court's decision to allow PCRA counsel to withdraw.

because no hearing was necessary on Appellant's meritless claims. Accordingly, Appellant's claim that he was impermissibly denied a "fully-counseled PCRA Petition" warrants no relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/26/18